UNITED STATES *v.* JACKSON.

SAME *v.* MOSBY.

*(Circuit Court, W. D. Tennessee.* November 24, 1885.)

1. CRIMINAL LAW — REV. ST. § 5515 — ELECTION LAWS — ENFORCING DUTY OF JUDGES OF ELECTION—STATE LAWS.

Congress has undertaken, by section 5515 of the Revised Statutes, to secure a fair election for representatives in congress by compelling the officers of election to discharge every duty devolved upon them in the exercise of that function. The only purpose of looking to the state election laws is to find the measure of those duties, and it is wholly immaterial whether those laws punish a violation of the duty or not, as that is done by the federal law, *proprio vigore.*

2. SAME—INDICTMENT—SPECIFIC INTENT TO AFFECT THE ELECTION—WHEN IT MUST BE CHARGED AND WHEN NOT NECESSARY.

The specific intent mentioned in the Revised Statutes, § 5515, to affect the election, or the result thereof, applies only to the clause in which it is found, and neither to the clauses preceding or following it, and therefore that intent need not be especially charged by the indictment, where the conduct complained of does not fall within that particular clause. The subject of special and general intent discussed, and *held* that the statute provides for two distinct classes of offenses, in one of which the specific intent is necessary to be charged, and the other not.

The indictment was framed under the following section of the Revised Statutes of the United States:

"Sec. 5515. Every officer of an election at which any representative or delegate in congress is voted for, whether such officer of election be appointed or created by or under any law or authority of the United States, or by or under any state, territorial, district, or municipal law or authority, who neglects or refuses to perform any duty in regard to such election required of him by any law of the United States, or of any state or territory thereof; or who violates any duty so imposed; or who knowingly does any acts thereby unauthorized, *with intent to affect any such election, or the result thereof;* or who fraudulently makes any false certificate of the result of such election in regard to such representative or delegate; or who withholds, conceals, or destroys any certificate of record so required by law respecting the election of any such representative or delegate; or who neglects or refuses to make and return

such certificate as required by law; or who aids, counsels, procures, or advises any voter, person, or officer to do any act by this or any of the preceding sections made a crime, or to omit to do any duty, the omission of which is by this or any of such sections made a crime, or attempts to do so,—shall be punished as prescribed in sections 5510, 5511."

*H. W. McCorry*, Dist. Atty., and *J. B. Clough*, Asst. U. S. Atty., for the United States.

*T. K. Reddick, C. A. Stainback*, and *F. T. Edmondson*, for defendants.

HAMMOND, J. The demurrer challenges the indictment in this case because, (1) while the state statute may impose a duty on the defendant as averred in the indictment, no state law attaches any penalty for the violation of the statute, and therefore it is not such a duty under the law as congress contemplated by the enactment of section 5515 of the Revised Statutes. (2) The specific statutory "intent to affect the election, or the result thereof," is not charged by the indictment. Rev. St. § 5515.

It requires only a very cursory reading of the statute to show that the first ground of demurrer is not at all well taken. It is the plain purpose of this statute to declare as an offense against the United States, *proprio vigore*, the neglect, refusal, or violation of any duty imposed upon an officer holding an election for representative in congress by any law, state or federal. It is not necessary, as counsel argue, that the state law imposing the duty shall attach a penalty for its violation in order to make it an offense under this statute. The only object for which we look to the state law is to find the measure of the officer's duty, as one charged with the function of holding the election. Once given a duty to perform in that regard, and its performance is an obligation imposed by this federal statute. Its nonperformance subjects the officer to the penalties here imposed. It is wholly immaterial how the state laws may look upon or treat a violation of his duty; for when the duty is assumed by him he comes immediately within the jurisdiction of this federal law, and must obey it or take the consequences here by this statute itself imposed for any neglect, refusal, or violation of that duty. He cannot escape by saying that the state does not punish the given conduct as an offense against its peace and dignity. It is the peace and dignity of the United States that he violates by every failure to discharge his duty as an officer of election. The United States does not concern itself with other elections, nor with the violation of the state laws as such in any election; but whenever a member of congress is to be elected, this act of congress steps in to protect the people of the whole United States against the evil effects of fraudulent elections by punishing those who hold the election for every violation of duty in the performance of their functions; or, to put it another way, congress seeks by this statute to guard the election of members of congress against any possible unfairness by compelling, under its pains and

penalties, every one concerned in holding the election to a strict and scrupulous observance of every duty devolved upon him while so engaged. This being the object of the statute, its requirements are that every officer of election shall discharge his duties in a manner to accomplish that object. If he does not, he becomes an offender against the laws of the United States, whether he be an offender against the laws of the state or not. This is too plain for any further argument, and that ground of demurrer is overruled.

The other objection is of more importance. Section 1025 of the Revised Statutes of the United States protects an indictment against objections for "any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant." But it has been properly held that where a statute requires that an act shall be accompanied by a particular intent to make it an offense, the omission to charge that intent is one of substance, and not form only. *U. S.* v. *Jackson*, 2 Fed. Rep. 502, 504.

It is a familiar principle that no act done or omitted to be done can be an offense without a wrongful intent, but the application of it to that class of offenses arising out of prohibitions by the law of conduct not in itself of an evil nature, is often misunderstood and confusing. I have not time here to go into the intricacies of the subject, either in its relation to moral philosophy or the somewhat narrower requirements of the criminal law, unless the moral philosophy takes into the consideration the governmental power to prohibit that which may be otherwise either innocent or good. It is sufficient to say that the legislature may, and often does,—sometimes mistakenly, perhaps,—prohibit the doing of a thing which ought to be done, or out of which no harm could arise, and yet the doing of that thing after the prohibition would be a crime, no matter what the intent. The evil intent consists in disobedience to the law. The legislature has the power to judge and does adjudge that the doing of the thing is not for the public good; and, whether its judgment be wise or unwise, it is always binding on the citizen, and the doing of it is a crime. This is particularly so with reference to that class of statutes imposing duties on public officials in the exercise of their public functions. The command of the legislative will must be obeyed, and disobedience is a crime, and may be punished as such.

Now, it is only where the legislature accompanies its prohibition of particular conduct with a declaration that the inhibited act shall be done with a specified intent, that that intent need be either specifically averred by the indictment or specifically proved on the trial. In other cases the wrongful intent inheres in the act itself, is charged by an averment of the doing of the act, and is proved by evidence showing that the act was done. It consists in a violation of the statute, and proves itself when the violation is shown. This is a sufficient statement of the general principles for the purpose we have in hand. It needs no citation of authority to support it, for every work

on criminal law or criminal procedure contains the assertion of them. They were applied, in our jurisprudence, in *U. S.* v. *Cruikshank*, 92 U. S. 542; *U. S.* v. *Fox*, 95 U. S. 670; *U. S.* v. *Jackson, supra; U. S.* v. *Wentworth*, 11 Fed. Rep. 52; *U. S.* v. *Thomson*, 12 Fed. Rep. 245; *U. S.* v. *Houghton*, 14 Fed. Rep. 544. In the last case cited it is said: "If one intends to do what he is conscious the law, which every one is presumed to know, forbids, there need not be any other evil intent shown." And, in the last but one: "But in many cases negligence or indifference to duty or consequences is equivalent to a criminal intent." 1 Bish. Crim. Law, (6th Ed.) § 223 *et seq;* Id. 313 *et seq;* 1 Bish. Crim. Proc. § 524 *et seq.*

Turning now to this indictment, and the statute under which it charges the offense, we may say, without special reference to the niceties of the several counts, that it charges that the defendants, being judges of an election for a member of congress at a certain precinct, neglected to perform, refused to perform, and violated the duty of the judges to keep the ballot-box within their sight, by permitting it to be taken out of their presence; *secondly*, that they neglected and refused to perform, and violated, another duty of the judges to open the box after the close of the election, and count the vote, by permitting it to be carried away before that was done; *thirdly*, that they violated another duty of the judges to keep the ballots safely, by permitting 377 of them to be taken out of the box before being numbered and counted. This is the substance of the indictment. The objection urged against it is that it does not charge that these acts alleged were done "with the intent to affect the election, or the result thereof."

The contention of defendants is correct, that, no matter how much it may appear, by the nature of the acts charged, that the election would by those acts be affected, if the statute only punishes them when done with the specific intention to affect it, that intention must be averred in the indictment. But in determining whether this be a proper construction of the statute it is necessary to observe that where the given act complained of is in itself of that character which would *per se* affect the election, or even of that dangerous tendency that, if permitted, it might affect the election, the legislature might, and in its wisdom probably would, prohibit the doing of that act at all, because of the danger that lurks about it, without reference to any special intention at the time to affect the result of the election injuriously. It would be the very place to prohibit carelessness or indifference that might affect an election injuriously, as well as a guilty and corrupt intention to do so. Absolute prohibition of the dangerous act, no matter with what intention, would be the logic of the situation and the surest way to secure the object of the legislature, namely, a fair election. I have not the least doubt such was the object of this statute. It proceeds upon the idea that the performance of every duty devolved upon the officers of an election is necessary to secure a fair election, and that any refusal, neglect, or

violation of that duty, knowingly, is criminal, and shall be declared and. punished. as. such by this statute. When the Code of Tennessee requires the judges of an election to take an oath that they "will not suffer the ballot-box to be out of the presence or sight of at least two of your number until every vote is counted out," it means absolutely to prohibit the judges from allowing the box to be out of their presence; that if one must go, two shall stay to guard it unceasingly. M. & V. Code, 1051; T. & S. Code, 844. The intent with which the box is allowed to be out of their presence is wholly immaterial. It is no matter whether any particular violation of this established rule of duty be with a corrupt intent to affect the election or not. The danger of permitting the box to be out of the presence of the judges is sufficient to support the prohibition. Here the statute of Tennessee imposes a duty, and congress has adopted it as a duty to be enforced by the federal statute, and any other intent is beside the statute. The other acts averred are in themselves of so fatal and dangerous a character that their prohibition without any specific intent is, so far as the object of the legislation is concerned, apparent, and they need no remark.

That this is the proper construction of the statute is apparent from its words, its punctuation, and grammatical structure; but, more than all, from its manifest reason for existence, as shown by the object our law-makers had in view, of securing a fair election through the strict enforcement of every duty imposed upon the election officers. There is a class of offenses denounced by this statute which require the specific intent urged by this demurrer; but they are, as any critical examination will disclose, acts of commission, and not omission. Not all the acts of commission denounced require the specific intent, and not one of omission denounced requires it. But this distinct class, not embraced in those denounced without special intent, require that intent, for the plainest of reasons: that without it there could be no offense described at all. The enforcement of every duty by punishing acts of omission and commission in violation of that duty is one thing that is done by this statute wholly on the theory I have suggested, of prohibiting hurtful or dangerous omissions and commissions without regard to specific intention at the time and on that occasion; and the punishment for doing any other thing whatever, not authorized by law to be done, which shall be done with a purpose of affecting the election or the result thereof, is another thing that is done by this statute. If authorized by law, the thing done cannot be criminal, no matter how much the election may be affected, injuriously or otherwise. If not so authorized, the thing done can become criminal only when done with a purpose to affect the election or its result. The distinction between these two well-defined classes, under this statute, is a plain one, when it is read in the light of its declared purpose. We may as well take the language which I have italicized in the section and apply it to all that comes after it in the section,

as to apply it to all that goes before. It fits one no more than the other, and would be out of place in either. It naturally belongs just where it appears, and should be properly confined to the clause in which it does appear.

My attention has been called to a difference in punctuation between the Revised Statutes and the original act as it appears in the Statutes at Large. The semicolon in the Revision after the words "or who violates any duty so imposed," is, in the Statutes at Large, a comma. Rev. St. 5515; 15 St. 433; Id. 146. I do not think this makes any difference, and the construction would be the same under either act. The semicolon of the Revision brings out the meaning more clearly than the comma of the original act, but the cardinal rule is to construe the statute according to its object as expressed by its language. Even where acts of parliament are not punctuated at all, designedly so, the courts must apply this cardinal rule, and punctuate so as to enforce the object of the act and give effect to the whole. *Doe* v. *Martin,* 4 Term R. 40, 66. But, by a special law, the Revision must control. Act 1878, c. 26; 19 St. 268. This construction is supported by the cases which have touched upon the subject, whenever you distinguish between offenses charged as coming under the different classes of offenses provided by the statute, as I have pointed out. Not one of the cases is against this ruling, if this distinction be attended to in reading the case. The case of *U. S.* v. *Nicholson,* 3 Woods, 215, does not consider the point, and in no way affects the question we have here. *U. S.* v. *Foster,* 6 Fed. Rep. 247; *U. S.* v. *Baldridge,* 11 Fed. Rep. 552; *U. S.* v. *Caruthers,* 15 Fed. Rep. 309; *U. S.* v. *Wright,* 16 Fed. Rep. 112; *U. S.* v. *Bader,* Id. 116; *U. S.* v. *Watson,* 17 Fed. Rep. 145; *U. S.* v. *Fisher,* 8 Fed. Rep. 414.

Demurrer overruled.

NOTE. The defendants were subsequently convicted on the counts for permitting the ballot-box to be out of their sight, simply, and acquitted on the other counts; the district attorney stating that there was no proof to show that the defendants were guilty of any conspiracy or participation in the robbery of the box by permitting it to be out of their presence for that purpose. They were each fined $100, and committed till the fine and costs, amounting to about $315 each, should be paid.—[REP.