## MACKEY v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. June 7, 1923.)

### No. 3799.

**1. Criminal law ⊂⊃21—Whether scienter is necessary element of offense, though not expressed in statute, is question of legislative intent.**

Whether scienter is a necessary element of a statutory crime, though not expressed in the statute, is a question of legislative intent, and in determining such intent consideration should be given to the nature of the offense with which the statute deals, particularly where the crime involves moral turpitude and the statute does not describe the offense, but merely uses a common-law name, as "larceny" or "embezzlement."

**2. Criminal law ⊂⊃20—Scienter as element of crime.**

There is a substantial difference between an act committed in violation of law and the failure to perform a duty imposed by law at, or within, a designated time, as regards question whether scienter is a necessary element.

**3. Criminal law ⊂⊃21—Construction of statute as to necessity of scienter may differ with nature of crime.**

Cases where scienter, not made an element of a crime by the terms of the statute, need not be alleged or proved are in general offenses in violation of regulatory or prohibitory statutes, enacted in the exercise of the police power.

**4. Indictment and information ⊂⊃88—Allegation that defendant "failed and refused" not averment of criminal intent.**

An allegation in an indictment that defendant "failed and refused" to comply with a statute should not be expanded to carry the implication that there was a deliberate, intentional, and inexcusable refusal to comply with the statute, either with or without demand therefor, especially where the indictment is not good without such expansion.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Fail.]

**5. Postoffice ⊂⊃36—Scienter is necessary element of embezzlement by postmaster.**

Under Criminal Code, § 225 (Comp. St. § 10395), providing that any postmaster who fails or refuses to remit or pay over money of the government coming into his possession when required by law or regulations of the department, or on lawful demand, "shall be deemed guilty of embezzlement," and that any failure to pay over such money when required "shall be taken to be prima facie evidence of such embezzlement," scienter is a necessary element of the offense, and must be alleged and proved.

In Error to the District Court of the United States for the Western Division of the Western District of Tennessee; J. W. Ross, Judge.

Criminal prosecution by the United States against W. F. Mackey. Judgment of conviction, and defendant brings error. Reversed and remanded.

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Walter Chandler, of Memphis, Tenn., for plaintiff in error.

S. E. Murray, U. S. Atty., of Memphis, Tenn.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge. W. F. Mackey, former postmaster at Neshoba, Shelby county, Tenn., was prosecuted upon an indictment charging embezzlement of money of the United States, derived from the sale of postal money orders, that had come into his possession and under his control as such postmaster. The indictment contained four counts. The first count charged him with the embezzlement of $1,942.48 on the 25th day of December, 1919. The second count charged him with the embezzlement of $890.67 on the 15th day of August, 1919. The third count charged him with the embezzlement of $921.64 on the 18th day of September, 1919. The defendant was acquitted on all three of these counts. The fourth count of the indictment is as follows:

"And the grand jurors aforesaid, upon their oaths aforesaid, do further present that William F. Mackey, late of Neshoba, county of Shelby, and state of Tennessee, in the circuit and Western division of the district aforesaid, and within the jurisdiction of this court, being then and there a postmaster, employed in the postal service of the United States as such postmaster, at Neshoba, in the state of Tennessee, aforesaid, heretofore, before the finding of this indictment, to wit, on or about the 11th day of December, A. D. 1919, did receive, have in his possession and under his control, as such postmaster at Neshoba, Tennessee, aforesaid, the sum of two thousand eight hundred one dollars and thirteen cents ($2,801.13), which said money was the property of the United States and was derived from the sale of postal money orders of the United States at the post office at Neshoba, Tennessee, aforesaid, and had theretofore come into his possession and under the control of the said William F. Mackey in the execution of and under color of his office as postmaster, aforesaid, and that he, the said William F. Mackey, being required on said date to remit and deposit said sum in the post office at Memphis, Tennessee, which had theretofore been designated as the depository of funds for said United States post office at Neshoba, Tennessee, with the exception of twenty-five dollars ($25.00), which the said William F. Mackey was authorized to retain at said United States post office at Neshoba, Tennessee, aforesaid, he, the said William F. Mackey, remitted only six hundred dollars ($600.00) of said funds to the United States post office at Memphis, Tennessee, aforesaid, and failing and refusing to remit or deposit the balance of said fund, to wit, two thousand one hundred seventy-six dollars and thirteen cents ($2,176.13), as he was bound and required to do as such postmaster under the laws of the United States and the regulations of the post office department of the United States, against the peace and dignity of the United States, and contrary to the form of the statute of the same in such case made and provided."

On this fourth count of the indictment the jury returned a verdict of guilty and sentence was imposed. The important question presented by this record is whether count 4 of this indictment charges the commission of a crime by the defendant.

Section 1241 of the Postal Laws and Regulations provides, among other things, that:

"Postmasters at money order offices shall remit daily to the depository designated by special instructions to each office, all surplus money or funds, unless the amount is less than fifty dollars, in which case no remittance is required."

Section 225 of the Penal Code (Comp. St. § 10395) provides, among other things, that a postmaster who fails or refuses to remit to or deposit in the treasury of the United States, or in a designated depository, any money or property coming into his possession or under his control in the execution of his official duties, or under color of his office, when required so to do by law or the regulations of the Post Office Department, or upon demand or order of the Postmaster General, either directly or through a duly authorized officer or agent, shall be deemed guilty of embezzlement, and upon conviction thereof shall be fined in a sum equal in amount to the value of the money or property embezzled, or imprisoned not more than ten years or both, and that any failure to produce or to pay over such money or property when required so to do, as provided by this section, shall be taken to be prima facie evidence of such embezzlement.

[1] It is claimed on behalf of the plaintiff in error that count 4 of this indictment is insufficient, for the reason that it fails to aver either an actual appropriation of the government funds to his own use or any willful or criminal intent on the part of the defendant in failing to remit funds in his possession on the 11th day of December, 1919, to the designated depository. The Supreme Court has recently considered this question in the case of U. S. v. Balint et al., 258 U. S. 250, 42 Sup. Ct. 301, 66 L. Ed. 604, in which case that court held that:

"Whether scienter is a necessary element of a statutory crime, though not expressed in the statute, is a question of legislative intent, to be answered by a construction of the statute."

The Balint Case, supra, was a prosecution for the unlawful sale of derivatives of opium and coca leaves, in violation of the Anti-Narcotic Act of December 17, 1914 (chapter 1, 38 Stat. 785 [Comp. St. §§ 6287g–6287q]). That statute does not make knowledge an element of the offense, and the indictment did not aver that defendants had sold the inhibited drugs, knowing them to be such. The court held that it was the manifest purpose and intent of Congress in enacting this statute to require every person dealing in drugs to ascertain at his peril whether that which he sells comes within the inhibition of the statute. The Anti-Narcotic Act is a regulatory measure, and the court in disposing of this case said:

"Many instances are to be found in regulatory measures in the exercise of what is called the police power, where the emphasis of the statute is evidently upon the achievement of some social betterment rather than the punishment of the crimes as in cases of mala in se."

In determining the legislative intent, consideration should be given to the nature of the offense with which the statute deals, and particularly where a crime involves moral turpitude and the statute does not describe the offense, but merely uses the common-law name, as "larceny," "embezzlement," "murder," and other serious offenses of that nature. U. S. v. Carll, 105 U. S. 611, 26 L. Ed. 1135; Moore v. U. S., 160 U. S. 268, 16 Sup. Ct. 294, 40 L. Ed. 422; Feeley v. U. S., 236 Fed. 903, 905, 150 C. C. A. 165.

[2, 3] There is also a substantial difference between an act committed in violation of law and the failure to perform a duty imposed

by law at or within a designated time. In the one case, when the act is committed, it is irrevocable, and the same evil results follow, whether intentional or unintentional. The failure to perform an act at a particular time is not always remediless. It may sometimes be performed at a later date without any substantial injury to the public business or welfare. All the cases sustaining indictments which fail to aver scienter, to which our attention has been called, charged acts of commission in violation of prohibitory statutes, in which knowledge and intent was not made an element of the offense. In such cases there is a strong presumption that it was the legislative intent that averment and proof of scienter should not be required. On the other hand, it is highly improbable that it was the intent of Congress in enacting section 225 of the Penal Code that a postmaster should be punished under its provision for a failure to remit post office funds in his possession at the particular time specified, if such failure was not intentional, or if the postmaster was prevented from performing that duty by facts and circumstances not under his control.

[4] It is true that this indictment charges that the defendant failed and refused to remit the funds in his possession on the 11th day of December, 1919, to the designated depository; but the statute itself provides that a postmaster who shall "fail or refuse" to make such remittances shall be guilty of embezzlement. If the contention of the government is right in this case, then, under the terms of this statute, a mere failure to remit at the time specified would be embezzlement, regardless of the fact that such failure might have been occasioned by sudden illness, injury, larceny, destruction of the funds, or other causes for which the postmaster ought not to be held criminally responsible. That this was not the intent and purpose of Congress is clearly evidenced by the further provision in the statute itself that:

"Any failure to produce or pay over any such money or property, when requested so to do as above provided, shall be taken to be prima facie evidence of such embezzlement."

"To refuse" does not necessarily imply a precedent demand, deliberately denied. "To fail and refuse" is a common legal phrase, implying only that conventional refusal which is inherent in mere failure. In the face of this common meaning of the word, an allegation in an indictment that defendant "failed and refused" should not be expanded to carry the implication that there was a deliberate intention and inexcusable refusal to comply with the statute, either with or without demand therefor. Particularly should this not be done in a case where the indictment is not good without that expansion. In this case, if the indictment were so construed, there is absolutely no evidence tending to prove an intentional and criminal refusal on the part of the defendant, other than his failure to make remittances in accordance with the requirement of the post office regulations. Indeed, the proof shows the Post Office Department's tacit approval of Mackey's long time practice of remitting only two or three times a month, in large amounts.

If it were the legislative intent that scienter should not constitute an essential element of the crime of embezzlement as defined by this

statute, then evidence that would establish beyond reasonable doubt the fact that the postmaster of a money order post office had government funds in excess of $50 in his possession, derived from the sale of postal money orders, and had failed to remit that money daily to the designated depository, would be conclusive, and not merely prima facie, evidence of embezzlement. The fact that the statute makes proof of failure to produce or pay over such moneys or property prima facie evidence only of such embezzlement contemplates the right of defendant to overcome this prima facie case by proof that such failure was unintentional, or that he was prevented from making such remittances by some cause or causes over which he had no control.

At common law, criminal intent was an essential element of the indictment and proof, and the same rule obtained as to statutory offenses, even where the statute itself failed to make criminal intent a specific element of the offense. The modification of this rule in reference to statutory offenses is based upon the presumption that such a requirement would defeat the purpose of the statute, and that a state may, in the maintenance of its public policy, provide that one who has committed an act in violation of a statute "will not be heard to plead in defense good faith or ignorance." U. S. v. Balint, supra.

Prosecution under section 225 of the Penal Code would not be obstructed, nor would the purpose of the statute be defeated, by requiring allegations and proof of criminal intent, for the reason that the statute itself provides that proof of certain facts shall be taken as prima facie evidence of embezzlement, and this, of course, includes criminal intent as well as all other essential elements of that crime.

[5] For the reasons stated, a majority of this court is of the opinion that scienter is a necessary element of the crime of embezzlement, as defined in section 225 of the Penal Code.

The judgment of the District Court is reversed, and this cause is remanded, with directions to sustain the defendant's motion in arrest of judgment.