## UNITED STATES v. NIELSEN et al.
### No. 8179.

District Court, N. D. Ohio, W. D.
Oct. 10, 1938.

E. B. Freed, U. S. Atty, of Cleveland, Ohio, and G. P. Openlander, Asst. U. S. Atty., of Toledo, Ohio, for the United States.

True, Crawford & True and Oliver True, all of Port Clinton, Ohio, for defendant.

KLOEB, District Judge.

This matter again comes before the Court upon the oral request of the attorneys for the defendants for the elaboration and clarification of the terms of the probation heretofore imposed upon the defendants.

1. The first question which arises is as to the terms upon which these defendants shall be allowed to sub-lease their marsh for duck hunting. Subject to the limitations hereinafter imposed, the defendants should be given the right to lease all or any portion of their marsh for the entire hunting season. However, these defendants shall cease the practice of operating a "pay-as-you-enter" or "commercial Marsh", and all leases shall provide for the lease of the marsh for the entire season rather than for any portion thereof. The lessees shall not be given the right to sub-let any portion of the premises leased by them.

Upon the understanding that it is common practice to allow the owner or lessor of marshland the right to maintain the level of the water therein, the Court sees no objection to any one of the defendants in the above case being given the right to supervise the maintenance of such water level.

2. It has been brought to the attention of the Court that certain of the defendants are the owners of wooden duck decoys, boats, and other equipment which would naturally be used in the operation of a duck marsh. In the event of the lease of the marsh owned by the defendants, the Court sees no objection to granting to these defendants the right to include the use of such wooden duck decoys, boats, and other equipment in such lease.

3. There is no desire on the part of the Court to deprive any one of the defendants of his opportunity to earn an honest livelihood. As the owners of the property, the defendants are, therefore, given the right to go into the marsh for the purpose of inspecting it in order to see that it is being properly maintained and to do or perform any or all other

necessary legal duties in connection with their business of raising muskrats.

4. In light of the fact that these defendants have for some years leased certain portions of their farm or marsh for the hunting of pheasants, the Court sees no reason why such practice should not be continued. However, any leases which are entered into with the hunters of pheasants, should specifically provide that no wild waterfowl are to be hunted or taken, and that violations of the lease in this respect will subject the lessees to penalty.

5. In framing the conditions of the probation in this case it was the intention of the Court to prevent the defendants from flooding fields of grain either by pumping water into such fields or by the construction or erection of dams for the purpose of impounding water. The Court's purpose in framing this condition was to prevent the defendants from flooding fields of grain for the purpose of attracting wild waterfowl.

The most important question which is presented to the Court is as to the right of the defendants to lease all or any portions of their marsh for the hunting of ducks or wild waterfowl during the 1938 season, beginning on October 15th and ending November 28th, 1938.

It is admitted by the defendants that they have planted approximately 30 acres of buckwheat and 15 acres of mixed corn and buckwheat at various places in their marsh with no intention of harvesting the crop, the sole purpose of planting such grain being to attract wild fowl.

The defendants admit a portion of this corn and buckwheat so planted by them is growing on land which is of such character that it will not support a combine or a tractor with a binder or mower. They have indicated their willingness to disk under these fields of corn and buckwheat in order that the possibility of ducks and waterfowl being further lured to their marsh will be eliminated as far as possible. This process of disking the fields will, it is admitted, cover the buckwheat and the corn to a depth of not more than two to three inches and, in the event of moderately heavy rainfall, it appears that there would be created an ideal condition under which ducks will puddle in these areas in their natural effort to devour the grain which has been so submerged.

While the Court is not unmindful that in depriving these defendants of the opportunity of leasing their marsh during the current duck hunting season, it is taking from them the considerable revenue which will be derived from such rental, it appears that there is no alternative but to deprive the defendants of such privilege.

During the past year there have come before the Court approximately twenty-five defendants who have been charged with the violation of the Migratory Bird Treaty Act, 16 U.S.C.A. §§ 703–711, and in searching the records it appears that since the adoption of this treaty there have each year been brought before this Court numerous individuals who have been charged with violations in one form or another. The frequency of these violations brings to the Court the realization that, while considered separately they might to a casual observer seem more or less trivial, the vicious practices which have been engaged in by hunters and marsh owners in this vicinity are such that the Court finds itself the one agency which, in the final analysis, stands between the wild waterfowl and the unscrupulous hunter or marsh owner whose sole desire is to "get the limit" by fair means or foul.

In the instant case, as well as in certain other prosecutions under the Act, the defendants have advanced the argument that they have not been advised as to their rights, duties and privileges under the regulations which have been published by the Bureau of Biological Survey, and that, because of this fact, they were innocent violators of the law. The Court cannot look with any favor upon this feeble attempt to excuse the violation. The Biological Survey maintains, at considerable expense, United States Game Management Agents, Inspectors and Game Wardens who are familiar with the rules and regulations as promulgated. Every marsh owner and every duck hunter can, with little inconvenience to himself, ascertain his rights and duties and any true sportsman who conscientiously desires to abide by the rules and regulations can speedily be advised of his rights.

In this case the defendants, in seeking to mitigate the situation which is now presented in the Nielsen marsh, maintain that the practice of feeding and baiting, as well as the planting of buckwheat and other grain, for the purpose of luring or

enticing wild waterfowl is general in the marshland in this area. As to this point the Court can only say that when evidence of such baiting or unlawful taking of wild waterfowl is properly brought before it the defendants will be severely dealt with. Certainly this fact, if it be a fact, constitutes no reason why these defendants, having deliberately planted grain and violated the law, should be allowed to profit by their unlawful acts.

Under the circumstances, it is the finding of the Court that, because of the baiting and feeding which has heretofore occurred in the Nielsen marsh, any one shooting within its boundaries, with knowledge thereof, would be guilty of violation of the law. Since it is the duty of the Court to prevent such violations, it is the order of the Court that during the 1938 duck hunting season the defendants be deprived of the right or privilege to shoot in such area, and such marsh is ordered closed for such purpose, and the United States Game Management Agents, Game Wardens, and Inspectors are hereby authorized and empowered to enforce such order.

It is understood, of course, that this order applies only to the 1938 duck hunting season, and that nothing herein contained is to bar the defendants of their right to lease any or all portions of such marsh under the conditions set forth herein and in the original order of probation So long as there is no further evidence of baiting or illegal practice, such leases are in accordance with the provisions of this memorandum.