## UNITED STATES v. REESE.
### No. 5528.

District Court, W. D. Tennessee, W. D.
June 13, 1939.

William McClanahan, U. S. Atty., and C. P. J. Mooney, Asst. U. S. Atty., both of Memphis, Tenn.

Caruthers Ewing, Jr., of Memphis, Tenn., for defendant.

MARTIN, District Judge.

The defendant has filed a demurrer and motion to quash a criminal information, on the ground that he is not charged with knowledge of the baiting with wheat to lure, attract and entice mourning doves which, it is averred, he hunted and killed on September 2, 1938, in violation of the Migratory Bird Treaty Act of July 3, 1918, 40 Stat. 755, as amended June 20, 1936, 49 Stat. 1555, Title 16, Secs. 703-

711, U.S.C., 16 U.S.C.A. §§ 703–711, and appropriate regulations adopted thereunder.

Is averment and proof of such scienter necessary to constitute a cognizable offense under the statute and regulations in pursuance thereof made by the Secretary of Agriculture?

The penalty provision of the statute is quoted: "Any person, association, partnership, or corporation who shall violate any of the provisions of said convention or of sections 703 to 711 of this title, or who shall violate or fail to comply with any regulation made pursuant to said sections, shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not more than $500 or be imprisoned not more than six months, or both." Title 16, Sec. 707, U.S.Code, 16 U.S.C.A. § 707, Act July 3, 1918, Chapt. 128, Sec. 6, 40 Stat. 756.

By amendment of June 20, 1936, Chapt. 634, Sec. 3, 49 Stat. 1556, Title 16, Sec. 703, U.S.C., 16 U.S.C.A. § 703, it was made unlawful by any means or in any manner to hunt, take, capture, or kill any migratory birds included in the treaty between the United States and Great Britain, or to attempt to hunt, take, capture or kill them, "Unless and except as permitted by regulations" made as provided in the Act of Congress.

The applicable regulation declares: " * * * mourning doves and white-winged doves are not permitted to be taken by means, aid, or use, directly or indirectly, of corn, wheat, oats, or other grain or product thereof, salt, or any kind of feed whatsoever, placed, deposited, distributed, scattered, or otherwise put out whereby such waterfowl or doves are lured, attracted, or enticed, regardless of the distance intervening between any such grain, salt, or feed and the position of the taker." Regulations promulgated by Acting Secretary of Agriculture, July 26, 1937, approved by the President by proclamation No. 2245 of July 30, 1937, and amended July 16, 1938, by Proclamation No. 2291, 3 F.R. 1766, DI. See Cumulative Annual Pocket Part, 1938, under Title 16 (Conservation) U.S.C.A. following section 704, page 204, Regulation 3.

The foregoing portions of the statute and the pertinent regulation quoted reveal that guilt is in nowise conditioned on scienter. Nowhere in the statute, or in the regulations promulgated pursuant thereto, will be found, either in express language or by necessary implication, any requirement of averment or proof of scienter to constitute a punishable violation of the statutory offense charged.

In Shevlin-Carpenter Co. v. Minnesota, 218 U.S. 57, 70, 30 S.Ct. 663, 666, 54 L. Ed. 930, the Supreme Court upheld the proposition that "public policy may require that in the prohibition or punishment of particular acts it may be provided that he who shall do them shall do them at his peril, and will not be heard to plead in defense good faith or ignorance." The court reiterated that "legislation may, in particular instances, be harsh, but we can only say again what we have so often said, that this court cannot set aside legislation because it is harsh."

In United States v. Behrman, 258 U.S. 280, 288, 42 S.Ct. 303, 304, 66 L. Ed. 619, it was said that, "It is enough to sustain an indictment that the offense be described with sufficient clearness to show a violation of law, and to enable the accused to know the nature and cause of the accusation and to plead the judgment, if one be rendered, in bar of further prosecution for the same offense. If the offense be a statutory one, and intent or knowledge is not made an element of it, the indictment need not charge such knowledge or intent." The Supreme Court then cites cases from lower Federal Courts, including an opinion by Judge Hammond, the first regular judge of this district, in United States v. Jackson, C.C., 25 F. 548, 550, and another district court decision in the Sixth Circuit, United States v. Guthrie, D.C., 171 F. 528, 531.

United States v. Bayaud, C.C., 16 F. 376, 384, to which reference is also made in United States v. Behrman, supra, contains a neatly expressed statement of the law: "Statutory crimes where knowledge or intent are not ingredients of the offense are common. The rule applied in such cases is that where a statute forbids the doing of a certain act under certain circumstances without reference to knowledge or intent, any person doing the act mentioned is charged with the duty to see that the circumstances attending this act are such as to make it lawful; and under such statutes a conviction may be had upon proof of doing the forbidden act, with-

out proof of knowledge by the accused of the circumstances specified in the statute. The books contain many cases where such a rule has been applied." The three-judge court cites applicable authorities in support of its text.

The opinion of Chief Justice Taft in United States v. Balint, 1922, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604, is considered the leading authority on the instant question. In holding that it is not necessary for the seller to know the character of the drugs sold to subject him to punishment for violation of the Harrison Anti-Narcotic Act, 26 U.S.C.A. §§ 1040–1054, 1383–1391, the Chief Justice thus concludes the opinion (258 U.S. at page 254, 42 S. Ct. at page 303, 66 L.Ed. 604) : "Its manifest purpose is to require every person dealing in drugs to ascertain at his peril whether that which he sells comes within the inhibition of the statute, and if he sells the inhibited drug in ignorance of its character, to penalize him. Congress weighed the possible injustice of subjecting an innocent seller to a penalty against the evil of exposing innocent purchasers to danger from the drug, and concluded that the latter was the result preferably to be avoided. Doubtless considerations as to the opportunity of the seller to find out the fact and the difficulty of proof of knowledge contributed to this conclusion. We think the demurrer to the indictment should have been overruled."

■ Elsewhere in the opinion (258 U.S. at pages 251, 252, 42 S.Ct. at page 302, 66 L.Ed. 604), it was said: "While the general rule at common law was that the scienter was a necessary element in the indictment and proof of every crime, and this was followed in regard to statutory crimes even where the statutory definition did not in terms include it (Reg. v. Sleep, 8 Cox, 472), there has been a modification of this view in respect to prosecutions under statutes the purpose of which would be obstructed by such a requirement. It is a question of legislative intent to be construed by the court."

■ There appears no sound basis here for an interpretation that the Congress intended to place upon the Government the extreme difficulty of proving guilty knowledge of bird baiting on the part of persons violating the express language of the applicable regulations promulgated pursuant to the statute; but it is more reasonable to presume that Congress intended to require that hunters shall investigate at their peril conditions surrounding the fields in which they seek their quarry.

The fact that the penalty provided is within the discretion of the trial judge a fine, or an imprisonment, or both, affords adequate protection to an offender unconscious of law violation against punishment more excessive than would be commensurate with the degree of guilt. Conviction does not necessarily mean imprisonment. No minimum fine is even required. A nominal or a small fine may be imposed upon a technical violator, innocent of guilty intent. If justice demands it, the conscious law violator, or the repeater, may be imprisoned within the limits of the statute. Congress has not placed an unintentional law violator in unjust jeopardy of arbitrarily fixed punishment, but has confided to the courts the duty and discretion of making the punishment fit the crime.

■ The high purpose of the high contracting parties in the Migratory Bird Treaty to protect these feathered friends of mankind against extermination might be utterly defeated by a narrow construction of the intent of Congress in its positive inhibitions by express language against the ruthless slaughter of them through forbidden lures. Mala prohibita statutes without enforceable penalties would necessarily fail of their beneficent purpose. · It would seem unreasonable to presume that the omission of a qualifying scienter to constitute guilt was an inadvertence of the lawmakers. The deduction is plain that Congress deliberately omitted scienter as an essential ingredient of the minor offense under consideration. This concept is logical in the light of the known practicality of the National Legislature in its enactments in support of the Migratory Bird Treaty. Congress clearly intended to make real the protection against the holocaustic slaughter of migratory birds.

There are two published opinions of Circuit Courts of Appeal dealing with the Migratory Bird Treaty Act; but in neither was the question of scienter involved.

In Cochrane v. United States, 1937, 7 Cir., 92 F.2d 623, the court, in sustaining a conviction of hunters for violation of the Act, held that Congress has power under the Treaty, inter alia, to prohibit the use of lures, and to prescribe the sort of

guns and other instruments which hunters may lawfully use to kill birds.

The Court of Appeals for the Ninth Circuit, in Cerritos Gun Club v. Hall, 1938, 96 F.2d 620, held that the same regulation adopted by the Secretary of Agriculture, which is under consideration here, does not lack the definiteness necessary to describe a penal offense. At the end of a long opinion, the court said (96 F.2d 629): "Since the Migratory Bird Treaty Act, conferring on the Secretary and the President power to make the regulation prohibiting baited hunting, is authorized by both the Congress and the Convention, the District Court rightly decided that appellants were not entitled to an injunction to protect the damage to their properties by restraining appellees from prosecution for their past and threatened violations of the regulations."

■ As was said in Cochrane v. United States, supra, the Supreme Court of the United States has definitely settled all questions as to the validity of the Migratory Bird Treaty and the first Act of Congress enacted pursuant to the Treaty, and has upheld both. Missouri v. Holland, 252 U.S. 416, 40 S.Ct. 382, 64 L.Ed. 641, 11 A.L.R. 984; Carey v. South Dakota, 250 U.S. 118, 39 S.Ct. 403, 63 L.Ed. 886.

■ The power of Congress to delegate to the Secretary of Agriculture power to promulgate administrative regulations under its Acts is well recognized. United States v. Grimaud, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563; Thornton v. United States, 271 U.S. 414, 46 S.Ct. 585, 70 L.Ed. 1013.

Counsel for defendant stresses the decision of District Judge Kloeb in United States v. Nielsen, D.C., 25 F.Supp. 54, 56, in which the court found that "because of the baiting and feeding which has heretofore occurred in the Nielsen marsh, any one shooting within its boundaries, with knowledge thereof, would be guilty of violation of the law." The answer is that Judge Kloeb did not hold that anyone shooting without knowledge of the circumstances would be innocent of violating the regulations promulgated pursuant to the Migratory Bird Treaty Act. If the implication urged by counsel was intended, this court cannot concur in the Ohio District Court decision.

Analysis of Mackey v. United States, 6 Cir., 290 F. 18, 21, heavily depended upon by the attorney for the defendant, affords no support for his position. The court distinctly says: "All the cases sustaining indictments which fail to aver scienter, to which our attention has been called, charged acts of commission in violation of prohibitory statutes, in which knowledge and intent was not made an element of the offense. In such cases there is a strong presumption that it was the legislative intent that averment and proof of scienter should not be required."

■ The conclusion has been reached that, in the instant case, it is unnecessary for the Government either to aver in the information, or to prove at the trial, that the defendant had knowledge of the unlawful baiting of the hunting ground, in order to render him amenable to punishment for a violation of the statute and the regulations promulgated pursuant thereto by the Secretary of Agriculture.

Accordingly, the demurrer of the defendant and his motion to quash the information are both overruled.