## UNITED STATES v. BEHRMAN.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR
THE SOUTHERN DISTRICT OF NEW YORK.

No. 582.   Argued March 7, 1922.—Decided March 27, 1922.

1. An exception in a statute defining an offense is met in an indict-
   ment by alleging facts sufficient to show that the defendant was
   not within the exception. P. 287.
2. An indictment need only describe the crime with sufficient clear-
   ness to show the violation of law and to inform the defendant of
   the nature and cause of the accusation and enable him to plead
   the judgment, if any, in bar of further prosecution for the same
   offense. P. 288.
3. An indictment for a statutory offense need not charge *scienter* or
   intent if the statute does not make them elements. P. 288.
4. Under the Anti-Narcotic Act of December 17, 1914, c. 1, § 2, 38
   Stat. 785, making it an offense to sell, barter, exchange or give
   away certain drugs except in pursuance of a written order of the
   person to whom such article is to be sold, etc., on an official form,
   and providing that nothing in the section shall apply to the dis-
   pensing or distribution of the drugs to a patient by a registered
   physician in the course of his professional practice only, or to
   their sale, dispensing or distribution by a dealer to a consumer in
   pursuance of a written prescription issued by a registered physi-
   cian, such a physician commits the offense if, knowing a person
   to be habitually addicted to the use of such drugs, and not pur-
   posing to treat him for any other disease, he issues him prescrip-

tions for quantities sufficient to make a great number of doses, more than enough to satisfy his craving if all consumed at one time, intending that he shall use them by self-administration in divided doses over a period of several days, and thus enables the addict to obtain such excessive quantities, without other order, from a pharmacist, and to have them in his possession and control with no other restraint upon their administration or disposition than his own weakened will. P. 288.

Reversed.

ERROR to a judgment of the District Court sustaining a demurrer to an indictment.

*Mr. William C. Herron,* with whom *Mr. Solicitor General Beck* was on the brief, for the United State.

The main enacting part of § 2 contemplates merely an external standard and does not require either guilty knowledge or guilty intent. The question is whether the defendant's action can be called a dispensing or prescription of drugs to a patient in the course of defendant's professional practice only, within the meaning of the exceptions. The so-called "patient" in this case was suffering from no disease except drug addiction. It must be admitted that that is a disease, and that the defendant intended by his method of treatment to cure it, and honestly believed that he could, by this method. Nevertheless, it is a well known fact, of which this court has taken notice, that drug addicts as a class are persons weakened materially in their sense of moral responsibility and in their power of will, and this court also knows, as a matter of common knowledge, that, in any community where drugs are prescribed, there will be a large number of physicians to whom any construction of § 2 will be applicable. The question, therefore, is whether every physician licensed and registered under the act is at liberty; if he honestly believes such a course to be proper, to furnish to drug addicts the means to obtain the drugs without any supervision upon the part of the various doctors in-

volved of the manner or time of taking or other disposition of the drugs.

In so far as the revenue feature of the act is concerned, see *United States* v. *Rosenberg,* 251 Fed. 963; *United States* v. *Doremus,* 249 U. S. 86; *Webb* v. *United States,* 249 U. S. 96, 99, 100; *Jin Fuey Moy* v. *United States,* 254 U. S. 189, 194.

While no question in regard to the intent or belief of the physician was raised or was material in the cases referred to, the principles laid down in them, in so far as they relate to the revenue feature, seem to encourage the conclusion that, irrespective of the intent or knowledge, the transfer of drugs without any supervision whatsoever would not be, as a matter of law, the prescription of the drugs to a patient in the legitimate practice of a physician's profession. In regard to the aspect of the act as a measure aimed to prevent drug addiction, the case made by the indictment must be looked at in the same spirit in which this court looked at the third certified question in the *Webb Case.* As a matter of common sense, no drug addict can possibly be cured by any such method as this, and the whole method of treatment is a mere pretense, however honest the doctor may be in his belief and intentions, by which the addict obtains a store of drugs to suit his cravings and to dispose of them for money if he so desires. A drug addict might visit many doctors and obtain drugs from all of them. The result would be to transfer the distribution of the drugs from regular licensed dealers to physicians.

See *Hoyt* v. *United States,* 273 Fed. 792; *Barbot* v. *United States,* 273 Fed. 919.

*Mr. Thomas C. Spelling,* for defendant in error, submitted.

It requires a strained, indeed a nonpermissible, construction to bring the administration, direct or through

prescriptions, of the narcotics specified, within the terms or meaning of the act, even if exceptions (a) and (b) had not been inserted. A physician in treating a patient and prescribing for him does not either sell, barter, exchange or give away the medicine which he prescribes. The prescription embodies professional advice for which the patient pays. He does not buy the prescription, but pays for the advice. The order must not only be issued on an official blank, but it must be the order " of the person to whom such article is sold, bartered, exchanged, or given." The statute differentiates amply for our present purpose prescriptions from the commercial orders intended.

In exception (b), prescriptions are placed in a distinct category from such orders. That the " written order " required to be presented by an ordinary purchaser is in a category other than the prescription is further shown by the requirement of different modes of authentication. In exception (b) the written prescription which the purchaser uses and to which the statute does not apply, " shall be dated as of the day on which it is signed by the physician who shall have issued the same." .

The statute says: " Nothing contained in this section shall apply: (a) To the dispensing or distribution of any of the aforesaid drugs to a patient by a physician . . . registered under this act in the course of his professional practice only." The proviso which completes that exception is not relevant nor is any portion of exception (b) relevant, except that the latter furnishes conclusive evidence that Congress had in mind the common or uniform method by which the exempted classes practice their professions, namely, by delivering written prescriptions. In other words, Congress recognized that civilization embraces a profession of numerous and, for the most part, highly esteemed membership, upon whom afflicted, diseased, crippled and dying humanity leans in pain and anguish. And, now, with no justifying words in the stat-

ute, plaintiff would interpolate a meaning to exclude those constituting a large class designated as " addicts," where the purpose is merely relief from pain and not to effect a cure. But even if we conceded the correctness of that extreme view it would not save this indictment.

The statute contains not a word of limitation upon the words " professional practice only," nor does it use the term "addict ", or any reference whatever to any class of patients or diseases, and the Government admits that addiction is a disease. Of course, a prescription could be resorted to by a regular licensed physician as a mere subterfuge for effecting a sale. But, here, not only is there a total absence of allegation of bad faith, unlawful intent and irregularity, but language is used clearly warranting a contrary presumption in each and all of these respects.

The Government argues that the amount of drugs is designated as " large ", but the allegation that the drugs were to be self-administered in divided doses " over a period of several days " seems to negative or modify any such inference. The court might infer as a matter of common knowledge that the quantity would be excessive if a limited number of doses were specified, but in this case, owing to the indefiniteness of " several days " we have no data to justify an inference that the quantity was large.

The facts alleged do not constitute a crime, because they are consistent with defendant's innocence and an honest and sincere purpose to cure King of his addiction to the use of the drugs dispensed, or to permanently better his physical condition due to such addiction.

The Government's argument is an admission that the decisions so far rendered do not support the desired extension and that a precedent to accomplish it is now sought.

Though we are not required to go so far, yet for humane reasons, we urge that any construction which would for-

bid and penalize the giving of a prescription to afford temporary relief, even though a cure was not in immediate contemplation, would be a harsh construction not warranted by any language in the statute.

In this indictment there is not a word to indicate that the defendant gave the prescription merely that the addict might make himself comfortable or that negatives the presumption that it was given with the intention of effecting a cure. *Hoyt* v. *United States,* 273 Fed. 792; *Barbot* v. *United States,* 273 Fed. 919.

It was not necessary that King should have been under the direct control of the defendant to constitute him a "patient" within the meaning of the statute, as the term is there used. *Jin Fuey Moy* v. *United States,* 254 U. S. 189; *United States* v. *Balint,* D. C. So. Dist. N. Y., June 28, 1921, unreported. See s. c., *ante,* 250.

MR. JUSTICE DAY delivered the opinion of the court.

This case is here under the Criminal Appeals Act, 34 Stat. 1246. The statute involved is the Narcotic Drug Act of December 17, 1914, c. 1, § 2, a, 38 Stat. 785, 786.

This statute in § 2, subdivision a, makes it an offense to sell, barter, exchange, or give away any of the narcotic drugs named in the act except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Commissioner of Internal Revenue. It is further provided that nothing in the section shall apply to the dispensing or distribution of any of the drugs to a patient by a registered physician in the course of his professional practice only, or to the sale, dispensing or distribution of said drugs by a dealer to a consumer in pursuance of a written prescription issued by a physician registered under the act.

The indictment charges that the defendant did unlaw-
fully sell, barter, and give to Willie King a compound,
manufacture, and derivative of opium, to wit, 150 grains of
heroin and 360 grains of morphine, and a compound, man-
ufacture, and derivative of coca leaves, to wit, 210 grains
of cocaine, not in pursuance of any written order of
King on a form issued for that purpose by the Commis-
sioner of Internal Revenue of the United States; that
the defendant was a duly licensed physician and registered
under the act; and issued three written orders to the said
King in the form of prescriptions signed by him, which
prescriptions called for the delivery to King of the amount
of drugs above described; that the defendant intended
that King should obtain the drugs from the druggist upon
the said orders; that King did obtain upon said orders
drugs of the amount and kind above described pursuant to
the said prescriptions; that King was a person addicted to
the habitual use of morphine, heroin and cocaine, and
known by the defendant to be so addicted; that King did
not require the administration of either morphine, heroin,
or cocaine by reason of any disease other than such addic-
tion; that defendant did not dispense any of the drugs
for the purpose of treating any disease or condition other
than such addiction; that none of the drugs so dispensed
by the defendant was administered to or intended by
the defendant to be administered to King by the de-
fendant or any nurse, or person acting under the direction
of the defendant; nor were any of the drugs consumed or
intended to be consumed by King in the presence of the
defendant, but that all of the drugs were put in the
possession or control of King with the intention on the
part of the defendant that King would use the same by
self-administration in divided doses over a period of sev-
eral days, the amount of each of said drugs dispensed
being more than sufficient or necessary to satisfy the
craving of King therefor if consumed by him all at one

time; that King was not in any way restrained or prevented from disposing of the drugs in any manner he saw fit; and that the drugs so dispensed by the defendant were in the form in which said drugs are usually consumed by persons addicted to the habitual use thereof to satisfy their craving therefor, and were adapted for such consumption.

The question is: Do the acts charged in this indictment constitute an offense within the meaning of the statute? As we have seen, the statute contains an exception to the effect that it shall not apply to the dispensing or distribution of such drugs to a patient by a registered physician in the course of his professional practice only, nor to the sale, dispensing or distribution of the drugs by a dealer to a consumer under a written prescription by a registered physician. The rule applicable to such statutes is that it is enough to charge facts sufficient to show that the accused is not within the exception. *United States v. Cook,* 17 Wall. 168, 173.

The District Judge who heard this case was of the opinion that prescriptions in the regular course of practice did not include the indiscriminate doling out of narcotics in such quantity to addicts as charged in the indictment, but out of deference to what he deemed to be the view of a local District Judge in another case announced his willingness to follow such opinion until the question could be passed upon by this court, and sustained the demurrer. In our opinion the District Judge who heard the case was right in his conclusion and should have overruled the demurrer.

Former decisions of this court have held that the purpose of the exception is to confine the distribution of these drugs to the regular and lawful course of professional practice, and that not everything called a prescription is necessarily such. *Webb* v. *United States,* 249 U. S. 96; *Jin Fuey Moy* v. *United States,* 254 U. S. 189.

Of this phase of the act this court said in the *Jin Fuey
Moy Case,* p. 194:

"Manifestly the phrases 'to a patient' and 'in the
course of his professional practice only' are intended to
confine the immunity of a registered physician, in dis-
pensing the narcotic drugs mentioned in the act, strictly
within the appropriate bounds of a physician's profes-
sional practice, and not to extend it to include a sale to a
dealer or a distribution intended to cater to the appe-
tite or satisfy the craving of one addicted to the use of the
drug. A 'prescription' issued for either of the latter pur-
poses protects neither the physician who issues it nor the
dealer who knowingly accepts and fills it. *Webb* v.
*United States,* 249 U. S. 96."

It is enough to sustain an indictment that the offense
be described with sufficient clearness to show a violation
of law, and to enable the accused to know the nature and
cause of the accusation and to plead the judgment, if one
be rendered, in bar of further prosecution for the same
offense. If the offense be a statutory one, and intent or
knowledge is not made an element of it, the indictment
need not charge such knowledge or intent. *United States*
v. *Smith,* 2 Mason, 143; *United States* v. *Miller,* Fed.
Cas. 15,775; *United States* v. *Jacoby,* Fed. Cas. 15,462;
*United States* v. *Ulrici,* Fed. Cas. 16,594, (opinion by
Miller, Circuit Justice); *United States* v. *Bayaud,* 16 Fed.
376, 383–4; *United States* v. *Jackson,* 25 Fed. 548, 550;
*United States* v. *Guthrie,* 171 Fed. 528, 531; *United States*
v. *Balint, ante,* 250.

It may be admitted that to prescribe a single dose, or
even a number of doses, may not bring a physician within
the penalties of the act; but what is here charged is that
the defendant physician by means of prescriptions has
enabled one, known by him to be an addict, to obtain
from a pharmacist the enormous number of doses con-
tained in 150 grains of heroin, 360 grains of morphine,

and 210 grains of cocaine. As shown by Wood's United States Dispensatory, a standard work in general use, the ordinary dose of morphine is one-fifth of a grain, of cocaine one-eighth to one-fourth of a grain, of heroin one-sixteenth to one-eighth of a grain. By these standards more than three thousand ordinary doses were placed in the control of King. Undoubtedly doses may be varied to suit different cases as determined by the judgment of a physician. But the quantities named in the indictment are charged to have been entrusted to a person known by the physician to be an addict without restraint upon him in its administration or disposition by anything more than his own weakened and perverted will. Such so-called prescriptions could only result in the gratification of a diseased appetite for these pernicious drugs or result in an unlawful parting with them to others in violation of the act as heretofore interpreted in this court within the principles laid down in the *Webb* and *Jin Fuey Moy Cases, supra.*

We hold that the acts charged in the indictment constituted an offense within the terms and meaning of the act. The judgment of the District Court to the contrary should be reversed.

*Reversed.*

Mr. Justice Holmes, with whom concurred Mr. Justice McReynolds and Mr. Justice Brandeis, dissenting.

If this case raised a question of pleading I should go far in agreeing to disregard technicalities that were deemed vital a hundred or perhaps even fifty years ago. But we have nothing to do with pleading as such, and as the Judge below held the indictment bad it can be sustained only upon a construction of the statute different from that adopted below.

The indictment for the very purpose of raising the issue that divides the Court alleges in terms that the drugs

were intended by the defendant to be used by King in divided doses over a period of several days. The defendant was a licensed physician and his part in the sale was the giving of prescriptions for the drugs. In view of the allegation that I have quoted and the absence of any charge to the contrary it must be assumed that he gave them in the regular course of his practice and in good faith. Whatever ground for scepticism we may find in the facts we are bound to accept the position knowingly and deliberately taken by the pleader and evidently accepted by the Court below.

It seems to me impossible to construe the statute as tacitly making such acts, however foolish, crimes, by saying that what is in form a prescription and is given honestly in the course of a doctor's practice, and therefore, so far as the words of the statute go, is allowed in terms, is not within the words, is not a prescription and is not given in the course of practice, if the Court deems the doctor's faith in his patient manifestly unwarranted. It seems to me wrong to construe the statute as creating a crime in this way without a word of warning. Of course the facts alleged suggest an indictment in a different form, but the Government preferred to trust to a strained interpretation of the law rather than to the finding of a jury upon the facts. I think that the judgment should be affirmed.