**SHAW v. UNITED STATES.**

No. 9916.

Circuit Court of Appeals, Ninth Circuit.

Oct. 26, 1942.

Rehearing Denied Dec. 18, 1942.

MATHEWS, Circuit Judge, dissenting in part.

See, also, 33 F.Supp. 531.

Morris Lavine, of Los Angeles, Cal., for appellant.

Maurice Norcop, Asst. U. S. Atty., of Los Angeles, Cal. (John G. Sobieski, of San Francisco, Cal., and James M. Evans, of Los Angeles, Cal., Attys., Securities and Exchange Commission, of counsel), for appellee.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a judgment of conviction based upon three counts of an indictment, Nos. 14, 15 and 16, each charging that the appellant and another person, not appealing, caused to be carried through the mails unregistered corporate securities in violation of the Federal Securities Act of 1933 as amended, 15 U.S.C.A. § 77a et seq. A typical count is as follows: "* * * did cause to be delivered by the United States mails a certain security, to-wit, a certificate, No. 732, for 250 shares of the capital stock of Consolidated Mines of California, a corporation, for the purpose of sale and for delivery after sale of said security to Dr. Homer J. Arnold and Florence R. Arnold, no registration statement being in effect as to such security and no exemption from registration being available, and said delivery by the United States mails was in the manner following, to-wit:

"Said defendants on or about December 21, 1936, caused to be delivered by the Post Office establishment of the United States according to the directions thereon, a postpaid envelope addressed to Dr. Homer J. and Florence R. Arnold, 345 South Norton, Los Angeles, California, enclosing said security, * * *."

Appellant either was acquitted or had sustained his demurrer to the other counts of the indictment. The appeal involves no question of fraud or unjust enrichment.

On the 16th count, a transaction involving mailing a certificate for 18 shares, received by J. C. and E. M. Goodrich, appellee admits no sufficient proof of mailing, and the judgment is reversed as to that count.

Section 5(a) (2), Title I, of the Act provides

"Sec. 5 [§ 77e]. (a) Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly—

* * * * *

"(2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale."

A. Each of the two surviving counts describes with sufficient certainty to the indicted defendant the crime he was accused of committing. United States v. Behrman, 258 U.S. 280, 288, 42 S.Ct. 303, 66 L.Ed. 619; Price v. United States, 165 U.S. 311, 17 S.Ct. 366, 41 L.Ed. 727; Grimm v. United States, 156 U.S. 604, 15 S.Ct. 470, 39 L.Ed. 550. The words "Post Office establishment of the United States" are inclusive of the persons making up that establishment who must have received the postpaid envelope enclosing the security to have delivered it to the stock purchasers.

478

If the accused, for purposes of his defense, desired a more detailed description of what persons were engaged in the process of carrying through the mails, he should have moved for a bill of particulars.

The prosecution offered evidence from which the jury could infer that no registration statement was in effect as to the securities caused to be carried through the mails. The jury also could infer that no registration statement was in effect as to the securities caused to be carried through the mails. The jury also could infer that appellant had caused one Tyler to cause to be carried through the mails a certificate for 250 shares of stock sold by Tyler to Dr. Arnold and a certificate for 30 shares to Regina Woodruff. The testimony showed that the securities sent through the mails were a part of 10,000 shares originally issued by the corporation to one McKiver and of which 5,000 shares were by him transferred to Tyler, who, in turn, sold from them the 250 shares and 30 shares to Arnold and Woodruff, of which the certificates were sent them through the mails.

B. There is evidence from which the jury could have inferred that McKiver acquired the shares by virtue of an exchange for them of his interest in a mining property, pursuant to a permit of the California Corporation Commissioner under the law of California which requires that the permit shall issue "after a hearing upon the fairness of such terms and conditions, at which all persons to whom it is proposed to issue securities in such exchange shall have the right to appear. * * *"[1]

The jury was entitled to infer from the existence of the permit that the Commissioner had performed his official duty and that there was such a hearing. If the jury so inferred, then the provisions of the Act requiring registration and penalizing issuing and dealing in unregistered shares, "shall not apply" to the shares issued to McKiver.[2]

The provisions of the Act would reapply only if McKiver transferred them back to the corporation for reissue. The question then arises whether the transfer from McKiver to Tyler was for Tyler's personal ownership or merely as agent for the corporation. In the circumstances of this case, if Tyler acquired such California permit shares for his personal ownership and for no one else, he could sell and mail them to Arnold and Woodruff without violating the Act. If he was a mere holding agent for the corporation and not personally owning them, the corporation issued them when it purportedly transferred the shares from Tyler to Arnold and Woodruff, and it sent the shares through the mails to consummate the sale of them. In the latter case, appellant, who dominated the corporation, was properly found guilty.

■ Appellant claims, and we agree with him, that the district court committed error in preventing the jury from considering his defense that Tyler acquired the California permit stock for his personal ownership, by the following instruction limiting the area of appellant's admitted burden of proof,

"The burden of showing an exemption from registration, if exemption is claimed, rests on the defendant. The fact that the stock sold was or was not *personally owned stock* is immaterial so far as the Federal Securities Act is concerned."[3] (Emphasis supplied.)

Personal ownership is clearly in issue with reference to the evidence presenting the situations above described. It is also relevant to other defenses of appellant.

Appellant relied on proof that, assuming the shares issued to McKiver were required to be registered, the transactions

---

[1] General Laws of California, Vol. I, Act 3814, § 4.

[2] "Sec. 3. (§ 77c). (a) Except as hereinafter expressly provided, the provisions of this title [subchapter] shall not apply to any of the following classes of securities:

\* \* \* \* \*

"(10) Any security which is issued in exchange for one or more bona fide outstanding securities, claims or property interests, or partly in such exchange and partly for cash, where the terms and conditions of such issuance and exchange are approved, after a hearing upon the fairness of such terms and conditions at which all persons to whom it is proposed to issue securities in such exchange shall have the right to appear, by any court, or by any official or agency of the United States, or by any State or Territorial banking or insurance commission or other governmental authority expressly authorized by law to grant such approval."

[3] It should be noted that the record nowhere shows that the district court instructed the jury what any of the exemptions were on which appellant had the burden of proof.

of selling the shares through the mails was not by an issuer, underwriter or dealer, and were exempt from the provisions of the Act by virtue of section 4 which, so far as pertinent, provides that "The provisions of Section 5 [77e] shall not apply to any of the following transactions: (1) Transactions by any person other than an issuer, underwriter, or dealer; * * *."

C. To prove that Tyler was other than an underwriter,—that is, not a "person who has purchased from an issuer with a view to, * * * the distribution of any security," [4]—evidence was offered to show that the 10,000 shares were issued to McKiver by the corporation for a valuable consideration, i. e., the transfer by McKiver to the corporation of an interest in a mine; that this consideration from McKiver to the corporation for the issuance of the shares to him was adequate for all of them, since the corporation had complied with the California Securities Act and the shares had been sold by the corporation under a permit of the California Corporation Commissioner.

In this situation (a) if McKiver acquired personal ownership with no intent to transfer the shares when he acquired them, a subsequent transfer to Tyler would not be a transfer from an underwriter, and Tyler would hold them and sell and mail them other than an underwriter; or (b) if McKiver intended to acquire the shares for the purpose of transferring them, he acquired them as an underwriter, in which situation Tyler did not acquire or hold them as an underwriter and hence sold and sent them through the mails "other than [as] an * * * underwriter."

However, it might be inferred (c) that because McKiver transferred the 5,000 shares to Tyler, without any consideration shown, on the same day as issued to McKiver, the 5,000 shares so transferred to Tyler were not for his personal ownership but merely as an agent for the corporation as principal, and hence that Tyler in fact acquired them from the corporation, the issuer,—in which event Tyler would be an underwriter and his transactions of selling and mailing the certificates would violate the statute.

Whether or not Tyler acquired the shares from the corporation, the issuer, through McKiver, its agent, as in situation (c), or from McKiver as personally owning them either freely in situation (a) or as underwriter and hence in situation (b), depends upon whether McKiver personally owned the stock or was merely an agent for an undisclosed principal. The jury might have made the inferences, from the evidence of witnesses believed or disbelieved, supporting any one of the three situations. Only if it made the inference (c) did the question of personal ownership, eliminated by the district court's instruction, become immaterial. The court's instruction prevented the jury from considering the evidence with a view to situations (a) and (b).

D. There is evidence, which, if the jury believed it, would warrant the inference that Tyler acquired the shares merely as agent for appellant, and that appellant, controlling the corporation, acting through Tyler, his agent, was acting as an underwriter under section 2(11) of the Act.[5] However, we cannot assume that the jury believed this evidence. They may not have believed it and convicted appellant on the theory that no matter if Tyler owned the shares personally and not as appellant's agent and not as an underwriter, nevertheless appellant was the person who sold the shares and mailed the certificates to Dr. Arnold and Regina Woodruff.

E. The appellee does not contend that if the 5,000 shares were so acquired by Tyler from McKiver, the fact that as to other shares, issued at a different time, Tyler was a dealer[6] in the transactions in the McKiver shares. Tyler was then dealing with his personally owned stock and not stock issued by "another person"

---

[4] Act, Sec. 2(11).

[5] "Sec. 2 [§ 77b]. * * * (11) The term 'underwriter' means any person who has purchased from an issuer with a view to, or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking; * * *. As used in this paragraph the term 'issuer' shall include, in addition to an issuer, any person directly or indirectly controlling or controlled by the issuer, or any person under direct or indirect common control with the issuer."

[6] Sec. 2. "(12) The term 'dealer' means any person who engages either for all or part of his time, directly or indirectly, as agent, broker, or principal, in the business of offering, buying, selling, or otherwise dealing or trading in securities issued by another person."

as required to constitute him a dealer. In any event, the jury may have disbelieved the Government's testimony that Tyler was a dealer and convicted appellant on the theory that Tyler could not have any personal ownership free from obligation not to intend to sell it at the time of purchase, even if McKiver personally owned it as an underwriter, and so transferred it to Tyler.

■ F. With respect to Shaw's burden to show that he was other than issuer, the shares were in fact issued by the corporation. There is evidence that Shaw controlled and dominated the corporation, but, under section 2(11), supra, such control makes Shaw an issuer only with reference to the transactions of an underwriter.

If the jury had not been improperly instructed that it could not consider either McKiver's or Tyler's personal ownership, they well may have found that the sale and mailing transaction by Tyler was one of his own stock and not a transaction by him as an underwriter of stock passing through him from Shaw as an issuer in the limited sense of section 2(11).

The instruction respecting the immateriality of personal ownership was error and requires a reversal and a new trial.

■ G. Appellant also contends that the carriage of the securities through the mails from one point in Los Angeles County to another is not the use of the mails in violation of the Securities and Exchange Act. There is no merit in this contention. The pertinent portion of the Act creating the offense reads "to carry or cause to be carried through the mails or in interstate commerce * * *". The "or" is disjunctive and the carriage through the mails is an element of the offense even though the carriage be intrastate.

H. Appellant also contends that the corporation was here issuing from time to time its original shares of common stock of a single class and that, since under California law the corporation must secure a permit for any shares sold for other than money, any shares so permitted to be sold constituted a separate issue. He therefore argues that the shares acquired from the corporation by McKiver consti-

tute a separate issue, and that, inasmuch as all of these shares were sold to persons resident within the State of California, they were securities which were "a part of an issue sold only to persons resident within a single State or Territory" within the exempting provisions of section 3(11).[7]

■ ■ We do not agree with this contention. The provision of the California law cannot determine the meaning of the word "issue" as used in section 3(11) of the Act. To hold otherwise would mean that Congress intended to have the Securities and Exchange Commission administering issues which may vary in character in several states of the Union. Nor can we agree with appellant's broader contention that each sale or exchange of originally issued shares of a common character is a separate issue within the meaning of "issue" as used in section 3(11). The "issue" of that provision includes all the shares of common character originally though successively issued by the corporation.

I. Appellant claims the court also erred in sustaining a demurrer to and striking out his plea in abatement and refusing to proceed to trial thereon. Section 22(c) of the Securities Act provides that a person concerned with security transactions may be required to testify before the Commission, but that "no individual shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, documentary or otherwise, except that such individual so testifying shall not be exempt from prosecution and punishment for perjury committed in so testifying."

■ Appellant's plea in abatement alleged not that he was required, but merely that he was requested, by a member of the Commission to testify before it on matters of fact relative to the transactions relied on in the counts of the indictment, and that he did so testify. There is no allegation in the plea that he claimed his privilege against self-incrimination. Such testimony without compulsion and without claim of immunity does not create the im-

---

[7] Sec. 3. "(11) Any security which is a part of an issue sold only to persons resident within a single State or Territory, where the issuer of such security is a person resident and doing business within or if a corporation, incorporated by and doing business within, such State or Territory."

munity from prosecution provided by the Constitution. Powers v. United States, 223 U.S. 303, 32 S.Ct. 281, 56 L.Ed. 448; United State ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S. 103, 113, 47 S.Ct. 302, 71 L.Ed. 560. Here there was no compulsion of a subpoena as in Counselman v. Hitchcock, 142 U.S. 547, 548, 12 S.Ct. 195, 35 L.Ed. 1110; United States v. Goldman, D.C., 28 F.2d 424, and Brown v. Walker, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819, relied upon by appellant.

Reversed.

MATHEWS, Circuit Judge (dissenting in part).

Appellant and Frank S. Tyler were indicted in 17 counts. Appellant demurred to the indictment and to each count thereof on the ground that it charged no offense against the United States. The demurrer was sustained as to count 17 and overruled as to counts 1–16. Appellant was tried on counts 1–16, was acquitted on counts 1–13, was convicted and sentenced on counts 14–16, and has appealed.

Appellant assigns as error the overruling of his demurrer to counts 14–16, each of which charged that appellant and Tyler "did cause to be delivered by the United States mails a certain security * * * for the purpose of sale and for delivery after sale * * * no registration statement being in effect as to such security * * * Contrary to the form of the statute in such case made and provided * * *."

There is no such statute. There is a statute—§ 5(a) (2) of the Securities Act of 1933, 15 U.S.C.A. § 77e(a) (2)—which makes it an offense to "carry or cause to be carried through the mails," for the purpose of sale or for delivery after sale, any security as to which no registration statement is in effect, but counts 14–16 did not, nor did either of them, charge that appellant and Tyler carried or caused any security to be carried through the mails. Each count charged that they caused such a security to be delivered by the mails, but there is no statute making that an offense. Carriage and delivery, obviously, are not the same thing.

The judgment should be reversed, and the case should be remanded with directions to sustain the demurrer to counts 14–16.