**RAZETE v. UNITED STATES.**

No. 11554.

United States Court of Appeals
Sixth Circuit.

Sept. 22, 1952.

Writ of Certiorari Denied Dec. 15, 1952.
See 73 S.Ct. 284.

Harry Kasfir, Cincinnati, Ohio (Nathan Solinger, Harry Kasfir, Cincinnati, Ohio, on the brief), for appellant.

J. Vincent Aug, Asst. U. S. Atty., Cincinnati, Ohio (Ray J. O'Donnell, U. S. Atty., J. Vincent Aug, Asst. U. S. Atty., Cinciniati, Ohio, on the brief), for the United States.

Before SIMONS, Chief Judge, and ALLEN and McALLISTER, Circuit Judges.

ALLEN, Circuit Judge.

A jury found appellant guilty of violation of § 1584, 22 U.S.C., 22 U.S.C.A. § 1584, and of conspiracy to violate § 1584 and to defraud the United States within the meaning of § 371, 18 U.S.C. The District Court rendered judgment in accordance with this verdict, and from this judgment this appeal is prosecuted.

The first four counts of the indictment charged Luther M. Kratz, co-defendant, with receiving various payments and the gift of a radio from appellant in connection with the procurement of equipment, materials and services under the Mutual Defense Assistance Program, chapter 20, 22 U.S.C., 22 U.S.C.A. § 1571 et seq. It was specifically charged that Kratz received from appellant $500 on September 8, 1950; $200 on January 15, 1951; a radio on February 12, 1951; and $200 on March 13, 1951. Counts 5 to 8 inclusive charged appellant with giving Kratz the precise sums of money and the radio charged in counts 1 to 4 to have been received by Kratz. Count 9 of the indictment was the conspiracy count. Kratz pleaded guilty to counts 1 to 4 and to count 9 of the indictment. A jury found appellant guilty as charged under counts 5 to 8, inclusive, and under count 9, and appellant was sentenced under the verdict. The sentences imposed were ordered to run concurrently.

The substantive counts, 5, 6, 7, and 8, in each instance charged that appellant paid the sums specified and gave the radio described, then and there "well knowing that KRATZ was then an officer of the United States, to-wit, a Contracting Officer assigned to the Electronics Branch, Aeronautical Equipment section, Procurement Division, Headquarters, Air Materiel Command, United States Air Force," but contained no allegation that appellant feloniously, wilfully, or with guilty intent did the acts charged.

Appellant introduced no evidence and did not testify. The following facts are established by the record and are uncontradicted:

Appellant, as president of Raytronic Laboratories, Inc., and owner and general manager of Cincinnati Electronics Company, was engaged in buying and selling, repairing and manufacturing radio and electronics equipment. In January, 1950, appellant went to Wright-Patterson Air Force Base at Dayton, Ohio, and was introduced to Kratz by one Vernon Gooderham, who had recently been contracting officer for the United States Air Force Base at Dayton, and had become a manufacturer's agent for appellant's company. At this meeting either appellant or Gooderham said to Kratz in substance that if Kratz could do something for him appellant could do something for Kratz. A similar statement was made by appellant or Gooderham to Kratz a little later. After appellant was informed that he was to receive a large contract for the manufacture of receiving sets for the Air Force, appellant expressed his pleasure and said that Kratz "would be rewarded some time later" for his help in getting things started. Appellant subsequently paid Kratz

the sums specified and gave him a valuable Philco radio, as charged in the indictment.

Appellant contends that counts 5 to 8 are fatally defective under the decision in Morissette v. United States, 342 U.S. 246, 72 S. Ct. 240, because intent or guilty mind was not alleged. He urges that count 9, the conspiracy count, is fatally defective upon the ground that (1) it does not allege intent, and (2) it sets forth a conspiracy to commit acts which by their very nature require concerted action by all participants. He contends that he cannot be charged with the substantive offenses and also with a conspiracy to commit the substantive offenses.

Appellee argues that under § 1584, 22 U. S.C., 22 U.S.C.A. § 1584, it is not necessary to allege intent in the indictment, for this statute is an enactment new to the general law from which the Congress excluded the element of intent. With reference to the conspiracy charge, appellee urges that in effect it charges intent and that the general rule applies; that the substantive offenses and the conspiracy to commit them are separate and distinct crimes for each of which appellant is answerable. Section 1584 reads as follows:

> "Whoever offers or gives to anyone who is now or in the past two years has been an employee or officer of the United States any commission, payment, or gift, in connection with the procurement of equipment, materials, or services under this chapter, and whoever, being or having been an employee or officer of the United States in the past two years, solicits, accepts, or offers to accept any such commission, payment, or gift, shall upon conviction thereof be subject to a fine of not to exceed $10,000 or imprisonment for not to exceed three years, or both."

Appellant's principal contention is that the decision in Morissette v. United States, supra, requires reversal here. But both the factual situations and the statutes involved are different. In the Morissette case the indictment was not questioned. The decision turned upon the fact that the accused, who admitted that he had taken certain castings belonging to the United States Government, testified that, thinking they had been abandoned he took them and sold them. The trial court in the cited case refused to charge that the accused could be convicted only if the jury found that he took the castings with wrongful or criminal intent. The Supreme Court held that the refusal to charge upon wrongful intent was reversible error.

There was no contention herein that the substantial payments of money by appellant to Kratz were made by mistake. It is uncontradicted that appellant knew that Kratz, during most of the period involved, was the Government officer in charge of making, with appellant, contracts which amounted to several million dollars. On two separate occasions appellant or his agent said he would do something for Kratz if Kratz would do something for him, and appellant later said that he would reward Kratz. Kratz understood that this meant appellant's company would reward him. The court charged the jury specifically upon the point of guilty knowledge, and the jury found that this existed. If the charge was required it was given; if not the error was in appellant's favor.

Apart from the factual distinction between the cases is the marked difference between the statutes involved. The Morissette case construes § 641, 18 U.S.C., which penalizes embezzlement, stealing, purloining and knowing conversion of property of the United States. The Supreme Court pointed out that the terms employed in the statute are descriptive of the "earliest offenses known to the law that existed before legislation." It held that the statute required interpretation in the light of the common law. It pointed out that the Congress "omitted any express prescription of criminal intent from the enactment before us in the light of an unbroken course of judicial decision in all constituent states of the Union holding intent inherent in this class of offense, even when not expressed in a statute. Congressional silence as to mental elements in an Act merely adopting into federal statutory law a concept of crime already so well defined in common law and statutory interpretation by the states may warrant quite contrary inferences than the same silence in creating an offense new to

general law, for whose definition the courts have no guidance except the Act. Because the offenses before this Court in the Balint and Behrman cases were of this latter class, we cannot accept them as authority for eliminating intent from offenses incorporated from the common law." 342 U.S. at pages 261–262, 72 S.Ct. at pages 248–249.

United States v. Balint, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604, and United States v. Behrman, 258 U.S. 280, 42 S.Ct. 303, 66 L. Ed. 619, held that in charging statutory crimes, where intent or knowledge has not been made an element of the crimes, the indictment need not charge knowledge or intent.

The Supreme Court also said:

"Neither this Court nor, so far as we are aware, any other has undertaken to delineate a precise line or set forth comprehensive criteria for distinguishing between crimes that require a mental element and crimes that do not. We attempt no closed definition, for the law on the subject is neither settled nor static. The conclusion reached in the Balint and Behrman cases has our approval and adherence for the circumstances to which it was there applied. A quite different question here is whether we will expand the doctrine of crimes without intent to include those charged here."

■ Section 1584 requires only that payment or receipt of money or gifts in connection with the procurement be shown. If this is a statutory, and not a common law crime, guilty mind need not be averred in the indictment. United States v. Behrman, supra; United States v. Balint, supra; Morissette v. United States, supra.

■ Section 1584 does not contain terms of the common law, nor terms that have been construed by the courts to require the element of intent or guilty knowledge. The crime described is not a common law crime. The statute has at least one important feature new to the statutory law. The controlling question is whether it creates a classification unknown to the general law for whose definition the courts "have no guidance except the Act." Morissette v. United

States, supra, 342 U.S. at page 262, 72 S.Ct. at page 249.

Appellant bottoms his argument that intent is an ingredient of the crime and must be averred in the indictment upon decisions rendered in bribery cases and other cases construing statutes which expressly require a specific intent. United States v. Staats, 8 How. 41, 12 L.Ed. 979; United States v. Cruikshank, 92 U.S. 542, 23 L.Ed. 588; United States v. Green, D.C., 136 F. 618, affirmed 199 U.S. 601, 26 S.Ct. 748, 50 L.Ed. 328; Cohen v. United States, 6 Cir., 294 F. 488; Evans v. United States, 153 U.S. 584, 14 S.Ct. 934, 38 L.Ed. 830.

■ In bribery the specific intent to influence official action is required by the statute and must be alleged and proved. Mackey v. United States, 6 Cir., 290 F. 18. But § 1584 contains no such requirement. It is similar to and falls under the definition of graft, an offense "new to general law", Morissette v. United States, supra, which is only recently recognized in the law. 38 C.J.S. 975. It appears for the first time in the federal statutes in the United States Code Revision of 1950 as the heading of chapter 11, Title 18, Bribery and Graft.

■ Graft means an advantage which one person by reason of his peculiar position of superiority, influence or trust exacts from another. Craig v. Warren, 99 Minn. 246, 109 N.W. 231. It also includes the fraudulent obtaining of public money by the corruption of public officials. Smith v. Pure Oil Co., 278 Ky. 430, 128 S.W.2d 931; Dixon v. Chappell, 133 Ky. 663, 118 S.W. 929. The acts of Kratz in receiving the payments from appellant were acts by which he received an advantage owing to his position of trust with the Government. The acts of appellant in making the payments resulted in the fraudulent obtaining of public money by the corruption of a public official.

■ Bribery, a common law crime, is the offering, giving, receiving, or soliciting anything of value with the intent to influence the recipient's action as a public official. It falls within a much narrower classification than that of graft. Illustrations of the two classes of enactment are found in

chapter 11, 18 U.S.C., on Bribery and Graft. The later enactments, in general, bear the earmarks of graft.

Section 1584 bears on its face evidence of the intent of Congress to extend the scope of the pre-existing law as to offenses of this nature and to penalize them drastically. The phrase "in connection with the procurement of equipment, materials, or services under this chapter" is very broad. A similar phrase occurs in certain graft sections of Title 18, chapter 11, such as §§ 221 and 222, but has not been construed judicially. "In connection with" means "related to." In this case definite contracts were secured for appellant under the Mutual Defense Assistance Act, and it was proved that the required connection existed. Appellant might perhaps have been indicted for bribery, but in cases less clear on the facts, the broad scope of § 1584 might permit conviction under a record where a conviction for bribery with its requirement of intent could not be secured.

Also in § 1584 the giving of money to or the acceptance of money by a person employed by the United States Government within the past two years is penalized. This provision exists in none of the bribery or graft sections of chapter 11, Title 18. It is plainly intended to eliminate the peddling of influence in the procurement described in the statute. The peddling of influence could not be reached under other statutes; yet history has shown that the use of contacts with contracting officers of the Government may undermine the public welfare not only financially, but morally. The ability to direct and influence important financial decisions which comes from having direct contacts with officials is possessed for a considerable time by men who have left governmental employment.

■ In the report to Congress on the Mutual Defense Assistance Act the amendment embodying § 1584 was explained as follows: "The amendment's purpose is clear—to support integrity of administration in this program." 81st Cong., 1st Sess., H.R.No. 1265, Pt. 2, p. 36.

We cannot assume that Congress, which has long dealt with so many phases of bribery and graft, in so many enactments clearly drawn, requiring a specific intent in numerous sections, and in others omitting a requirement of either specific intent or guilty knowledge, acted inadvertently in drawing § 1584. We are compelled to conclude that the Congress intended in this graft statute to deal with situations which had not existed on such a scale before the period after World War II, and to handle them differently from the situations presented in bribery cases. During this period new federal agencies were set up, handling vast funds, and exercising broad and novel powers. Congress intended in § 1584 heavily to penalize acts which would demoralize the public service It realized that colossal opportunities had been created for the improper use of influence in obtaining financial advantage through government contracts. It considered the doing of the acts described as wrongful and felonious and therefore penalized them without a requirement of guilty mind. The legislative intent is the test. Morissette v. United States, supra, 342 U.S. at pages 261–262, 72 S.Ct. 240.

■ We conclude that § 1584 describes an offense "new to general law" and that the silence of Congress with reference to mental elements in the offense was due to its intention that persons seeking to tap this great new source of public wealth made available in the Mutual Defense Assistance Act should act at their peril; that influence peddling should be absolutely eliminated from this type of governmental transaction. It follows that the indictment was not invalid for lack of charge of the existence of felonious intent, and it was unnecessary for the trial court to charge the jury as to the existence of *mens rea.*

■ If we are in error as to our conclusion that counts 5 to 8 are valid, the judgment must still be sustained, for intent was charged under count 9 of the indictment and the count was valid.[1] The verdict was gen-

---

Count Nine

1. That from on or about January 20, 1950, until the date of the return of this indict-

ment, in the Southern District of Ohio, Western Division, and within the jurisdiction of this Court, the defendants,

eral, and the sentences imposed under the various counts were concurrent. Under the well-established rule, one good count in an indictment containing several counts is sufficient to sustain a judgment. Dunbar v. United States, 156 U.S. 185, 15 S.Ct. 325, 39 L.Ed. 390; Powers v. United States, 223 U. S. 303, 32 S.Ct. 281, 56 L.Ed. 448, Cf. Brooks v. United States, 267 U.S. 432, 45 S.Ct. 345, 69 L.Ed. 699.

In the conspiracy count intent was plainly alleged. The count avers that appellant conspired to violate § 1584 and to defraud the United States. Conspiracy to violate law is bottomed on unlawful and willful intention. Intent, unlawfully or unlawfully and willfully to evade performance of a statutory duty is clearly enough alleged by the statement that the accused conspired to do so. Burroughs and Cannon v. United States, 290 U.S. 534, 544, 54 S.Ct. 287, 78 L. Ed. 484.

The allegation of conspiracy to violate the criminal law involves deliberate plotting to subvert the laws. As stated in United States v. Rabinowich, 238 U.S. 78, 88, 35 S. Ct. 682, 685, 59 L.Ed. 1211: "For two or more to confederate and combine together to commit or cause to be committed a breach of the criminal laws, is an offense of the gravest character, sometimes quite outweighing, in injury to the public, the mere commission of the contemplated crime." Conspiring to defraud the United States is in itself "inconsistent with an honest purpose." Cf. Evans v. United States, supra,

153 U.S. 591, 14 S.Ct. 934. In the Morissette case, supra, 342 U.S. at page 252, 72 S.Ct. 240, the Supreme Court pointed out that the term "fraudulent intent" has been used by the courts in the sense of guilty knowledge.

Appellant contends, however, that under the judgment of this court in Freeman v. United States, 6 Cir., 146 F.2d 978, the ninth count must be held defective for the reason that it charges a crime which in its very nature requires concerted action of all the participants. This contention likewise cannot be sustained. In the Freeman case the same evidence proved both the conspiracy and the substantive offenses, and it was therefore held that only one crime had been committed. Here the crime was complete with the payment of the money to Kratz, a government employee, in connection with the procurement of goods under the Mutual Defense Assistance Program. The unlawful agreement had to be proved by other evidence. The case thus falls within the general rule re-announced in Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 1182, 90 L.Ed. 1489: "* * the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses."

United States v. Dietrich, C.C., 126 F. 664, sheds no light upon the question. It has in effect been overruled. United States v. Holte, 236 U.S. 140, 35 S.Ct. 271, 59 L. Ed. 504; Ex parte O'Leary, 7 Cir., 53 F.2d 956, 957; May v. United States, 84 U.S.

---

LUTHER MILES KRATZ and LAWRENCE ALBERT RAZETE, did conspire to commit offenses against the United States, and to defraud the United States by conspiring to violate Section 1584, Title 22, United States Code, and to defraud the United States within the meaning of Section 371, Title 18, United States Code, in that:

(1) They did conspire to cause payments and gifts to be given by RAZETE, and to be accepted by KRATZ, then and there an employee and officer of the United States, in connection with the procurements of the equipment, materials, and services referred to in the Contracts mentioned in the First Count of this indictment, which procurements were made under Chapter 20, Title 22, United States Code;

(2) The defendants did further conspire to defraud the United States by agreeing that RAZETE would submit an increased bid price on Contract No. AF 33(038)-16849, dated October 31, 1950, and that KRATZ would accept such price, if possible, and award such contract to Raytronic Laboratories, Inc.; and

(3) The defendants did further conspire that in consideration for the payment of money from time to time by RAZETE to KRATZ, that KRATZ would so perform the duties of his office as to favor RAZETE in the procuring of United States Government Contracts by Raytronic Laboratories, Inc., and Cincinnati Electronics Company.

App.D.C. 233, 175 F.2d 994. Also it involves a statute, R.S. 1781, 18 U.S.C. § 216, which specifically made the agreement, as well as the payment, a substantive offense. We hold that count 9 is valid.

 Appellant finally urges that the motion for acquittal should have been granted upon the ground that there was no proof that any equipment, materials, or services were procured for any nations to be aided by the Act; that there is no evidence in the record showing that the procurements were under the Mutual Defense Assistance Act and that the exhibits produced by witnesses for the Government apparently contradicted their testimony. However, § 1584 does not impose upon the Government the burden of proving that materials were actually procured for foreign nations under this statute, nor that appellant knew that the contracts involved Mutual Defense funds. Moreover, the uncontradicted testimony shows that contracts were entered into between the Government and appellant providing for equipment, materials, and services to be paid for out of the Mutual Defense Assistance Program. The civilian chief of the Foreign Aid Fund, who administers the funds appropriated by Congress and allotted to the Air Force for procurement of supplies to foreign countries, testified with reference to each of the three contracts that over $800,000 of the funds contracted for came from the Mutual Defense Assistance Program. Under supplement No. 1, the foreign aid appropriation was $25,000. Under supplement No. 2, $750,000 mutual aid funds were involved. Under a third contract mutual aid funds totaled $50,471.

Each contract carried lists of alphabetical letters and figures identifying the particular appropriation. With reference to supplement No. 1, the civilian chief interpreted these figures as follows:

"97 is the number assigned to funds appropriated by Congress and allotted to the Air Force. The 111 0045 is appropriation allotment serial number assigning that part to Wright-Patterson Air Force Base. The .080 represents the country which the funds are going to. The 163–5000 is the Head-quarters Procurement Control No. U. The 903 is the project set up to cover specific items bought from. And S33038 is Wright-Patterson Air Force Station number."

The symbol .080 which the civilian chief testified represents the country to which the funds are going is the same symbol which is found in the contract including $750,000 of mutual aid funds. The civilian chief testified that the foreign aid funds are always indicated by the same symbols.

Appellant's contention that the exhibits introduced by the civilian chief contradicted his testimony also has no merit. The contradiction is claimed to arise from the fact that on each of the contracts there is a stamp which reads as follows:

"Copy Received. Sufficient USAF Funds Have Been Obligated to Cover The Maximum Amount of Monies Which The Government is Obligated To Pay Under This Instrument."

Since the civilian chief is the officer in charge of funds appropriated and allotted to the Air Force for procurement under the Mutual Defense Assistance Act, there is no contradiction between this statement and the contract.

Section 1574(a), 22 U.S.C., 22 U.S.C.A. § 1574(a), specifically provides for allocation by the President to any agency of the funds provided under the Mutual Defense Assistance Program. The contracts in evidence recognize that the U. S. A. F. Procurement Field Office has administrative responsibility for the agreement. At best the stamp mentioning "USAF Funds" and the symbol raise an issue of fact which was resolved against appellant by the jury; but under the statute and the record the stamp and the symbol are evidence supporting the testimony of the witnesses, one of whom, Kratz, was the contracting officer for the Procurement Division of the Wright-Patterson Air Force Base, and personally acquainted with the contracts involving Mutual Defense funds.

Appellant has raised other questions which we have considered, but deem unnecessary to discuss.

We find no reversible error in the admission or exclusion of testimony, nor in the charge of the court.

The judgment of the District Court is affirmed.