78 N.J. Super. 60 (1962)
187 A.2d 383
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
EDWARD J. HAYNES, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Essex County Court, Law Division.
Decided December 21, 1962.
*61 Mr. Charles Weinstock, for defendant-appellant.
Mr. Thomas P. Ford, Jr., Assistant Prosecutor, for plaintiff-respondent (Mr. Brendan T. Byrne, Prosecutor).
MATTHEWS, J.C.C.
Edward J. Haynes was convicted in Part I of the Municipal Court of the City of Newark for failure to have a narcotic registration card in his possession on September 28, 1962, under the provisions of N.J.S. 2A:169A-4. He was sentenced to a term of six months in the Essex County Penitentiary on October 11, 1962. He appeals his conviction to this court.
On September 28, 1962 defendant Haynes and another were observed by two officers of the police department of the City of Newark allegedly engaging in activities commonly known as jostling. Defendant and his companion, apparently aware of the observations of the officers, left the scene of their activities and proceeded north on Broad Street and, thence, east on Clinton Street to the doorway of the Union Building. At this point they were apprehended by the police officers and arrested, ostensibly on the charge of jostling. On arrival at police headquarters, interrogation of defendant Haynes disclosed that he was registered under the provisions of N.J.S. 2A:169A-1 as a narcotics violator. He was thereupon asked to produce his registration card which he is required to carry under the provisions of N.J.S. 2A:169A-4. He informed the authorities that he did not have the card in his possession since he had inadvertently left the same in another pair of trousers which were at his home. He offered to make a telephone call and have his mother bring the card to police headquarters. He also requested one of the officers to go to his home and procure the card. Both requests were *62 denied. Thereafter, on October 11, 1962, after an adjournment, defendant appeared before a magistrate on the charge presently here for review, and was found guilty. The aforementioned sentence followed.
Defendant argues on this appeal that the provisions of N.J.S. 2A:169A-4 must be read by the court to include the element of intent in its provisions. It is argued that the statute as presently constituted without the expressed requirement of intentional or willful failure to carry a registration card is contrary to every principle of our criminal jurisprudence  unless the element of intent or willfulness is deemed to have been included implicitly in the provisions by the courts. The authority for this argument which is cited to me by defendant is Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952).
The provisions of N.J.S. 2A:169A-4, insofar as they are applicable here, read as follows:
"Every person so registered shall be given a card of identification signed by the chief of police or the officer in charge of the office of the State Police with whom he registered, * * * and every such person so registered shall carry with him such card of identification and any failure to do so or to present the same, when so requested by a police officer, shall be deemed to be a violation of this act."
Under the provisions of N.J.S. 2A:169A-8 a violation of section 2A:169A-4 constitutes a disorderly person's offense. The maximum general penalty for a disorderly person's offense under the provisions of N.J.S. 2A:169-4 is imprisonment for not more than one year or a fine of not more than $1,000, or both.
Defendant's reading of Morissette seems to be that a legislative body may impose a so-called strict liability under criminal statutes only in cases where the penalty for the violation of such statutes does not include imprisonment. While such a principle may be desirable under our concepts of justice and fair play, I do not believe that a fair reading of Justice Jackson's opinion for the court in Morissette can lead to such a result. Indeed, the Supreme Court in Morissette *63 expressly approved the decisions of the court in United States v. Balint, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922), and United States v. Behrman, 258 U.S. 280, 42 S.Ct. 303, 66 L.Ed. 619 (1922). Both Balint and Behrman involved violations of the Narcotics Act of December 17, 1941, 38 Stat. 785, c. 1. That statute did not make knowledge an element of the offense of selling to another a derivative of opium not in pursuance to a written order on a form issued for this purpose by the Commissioner of Internal Revenue. Justice Jackson pointed out that Balint and Behrman both involved offenses belonging to a category of a character different than the crime then before the court.
Implicit in Justice Jackson's opinion is a recognition of the differences between the so-called public welfare offenses and those crimes which have their origin in our common law. Despite this classification, however, the opinion indicates in footnote 14 (342 U.S., at p. 254, 72 S.Ct., at p. 245):
"14. Consequences of a general abolition of intent as an ingredient of serious crimes have aroused the concern of responsible and disinterested students of penology. Of course, they would not justify judicial disregard of a clear command to that effect from Congress, but they do admonish us to caution in assuming that Congress, without clear expression, intends in any instance to do so. * * *" (Emphasis added.)
In State v. Labato, 7 N.J. 137, 149 (1951), our Supreme Court, in speaking of the necessity of the requirement of the element of intent in criminal statutes, stated:
"* * * At common law, scienter is an indispensable element. The constituents of a criminal offense at common law are an evil intention and an unlawful act. Actus non facet reum, nisi mens sit rea. State v. Woodward, 99 N.J.L. 49 (Sup. Ct. 1923). But it is within the competency of the lawgiver, in the common interest, to declare an act criminal irrespective of the knowledge or motive of the doer of the act. The Legislature may make the doing of the prohibited act criminal or penal, regardless of a corrupt or criminal purpose or even knowledge of the illegal character of the act; and in such case only the doing of the proscribed act need be shown. [Citations omitted.] The criminal mind is not essential where the Legislature has so willed. The doer of the act may be liable criminally *64 even though he does not know the act is criminal and does not purpose to transgress the law. But it is quite another thing to assess with criminal or penal consequences the unknowing `possession' of contraband articles. That would constitute an abuse of the police power. * * *"
In Halsted v. State, 41 N.J.L. 552, 585 (E. & A. 1879), the court held that given knowledge could not be implied as an element of the statutory crime then under consideration which related to the expenditure of public funds and excessive appropriations. Chief Justice Beasley, speaking for the court, pointed out that in some instances the requirement of given knowledge was implied, but in others it was not. The test was not to be regarded as one solely of statutory construction. The Chief Justice made it clear that there should be taken into account the nature of the conduct sought to be controlled and the common experience of mankind in dealing with such affairs.
In State v. Kuehnle, 85 N.J.L. 220, 225 (E. & A. 1913), Justice Swayze stated that while the Legislature could ordinarily make an act criminal without regard to criminal intent, the question was whether it had done so. He noted that the decision in Halsted "turned on the fact that the duty to be performed was a simple one, not subject to very great difficulties in its performance."
In State v. Hudson County News Co., 35 N.J. 284, 293 (1961), Justice Jacobs, in his opinion for the Supreme Court, noted that since absolute criminal liability such as was approved in Halsted may harshly result in the imprisonment of persons who are not morally culpable, such a doctrine has received understandable criticism in academic circles. The Justice notes that the modern judicial trend is fortunately the other way.
At first blush, the principle of strict liability in criminal law appears to be offensive to every concept which we hold as fundamental in our criminal jurisprudence. There is no question but that numerous instances may be found under the Anglo-Saxon system in which an individual may be held *65 strictly responsible for deviation from a statutory prescribed standard of conduct. Most of these statutes may be found in the area of the so-called public welfare offenses. Thus, we find statutes controlling the distribution of food, drink, drugs and securities. The complications engendered by the progress of our civilization giving rise to increased risks to the citizenry unless new standards of care and conduct were created, shows the necessity for these types of laws. As is required in every case involving the rights of an individual, it is necessary for the administrator of the law, when an offender is brought to the bar, to balance the interest of the public in the conduct sought to be controlled and the rights of the individual who has allegedly offended that public interest.
Under the provisions of N.J.S. 2A:169A-4 a person registered as a narcotics offender is required to carry a registration card, provided for in the act, and to present it to appropriate authorities upon demand. No expression either directly or by implication is given by the Legislature that a failure to carry the card, which is deemed to be a violation of the act, must be willful or intentional. The act of carrying the card is indeed a simple requirement when it is considered as an act divorced from any considerations either emotional or intellectual relating to such matters pertaining to the general registration of citizens usually associated with a police state. The reason for the existence of the Narcotic Control Act is obvious. The benefit to be derived therefrom need not be expounded. The interest of the public in the control of narcotics traffic and the elimination of narcotics addiction certainly outweighs the right of one who has been involved in offenses against the narcotic laws.
Considering these factors, it is my opinion that the Legislature, in enacting N.J.S. 2A:169A-4, has not included by implication that there be an intentional or willful failure to carry the registration card in question to constitute a violation of the act.
It is clear that the offense created under the statute in question is not one the commission of which involves a grave *66 breach of social conduct. Indeed, this is true of most regulatory statutes which impose penal consequences as the alternative for a failure to conform thereto. The statute in question partakes of a civil rather than of a criminal offense. See generally Perkins on Criminal Law, 692 et seq. (1957). In this regard, I believe it is necessary for those of us charged with the administration of the law to consider all of the factors surrounding the offense in punishing those who have been found guilty of violating the statutory provision. Our statute permits imprisonment for violation. Such a penalty, I believe should be reserved for those situations where it can be shown by the State beyond reasonable doubt that the conduct of the defendant in failing to produce his identification card was so culpable as to lead to the reasonable inference that his failure was due to a willful disregard for the law. I believe that the Legislature, in enacting the statute in its present form, has intended to rely upon the use of sound judicial discretion in determining the measure of punishment to be conferred upon violators. Certainly, when punishment is considered, mitigating circumstances may be offered on behalf of defendant.
It is my conclusion that defendant has violated the provision of N.J.S. 2A:169A-4 in that he failed to produce his identification card on September 28, 1962. Accordingly, I find him guilty as charged. I believe that under the circumstances of this offense, considering the explanation offered by this defendant and the corroboration thereof by the police officers concerned, that the punishment of six months' imprisonment was far too severe. Accordingly, I sentence the defendant to the time he has already spent in custody.